No. 24-6048

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE TENTH CIRCUIT

---

Valerie Eakins,

*Plaintiff-Appellee,*

v.

Whaleco Inc. d/b/a Temu,

*Defendant-Appellant.*

---

On appeal from an Order Denying Arbitration
U.S. District Court, W.D. Oklahoma No. 5:23-cv-00560-J
The Honorable Judge Bernard M. Jones

---

## APPELLANT'S REPLY BRIEF

---

Benjamin G. Shatz, BShatz@Manatt.com
MANATT, PHELPS & PHILLIPS, LLP
2049 Century Park East, Suite 1700
Los Angeles, CA 90067-3119
(310) 312-4000 ♦ Fax (310) 312-4224

*Attorneys for Appellant*
Whaleco Inc. d/b/a Temu

Oral Argument Requested

# TABLE OF CONTENTS

INTRODUCTION................................................................... 7

ARGUMENT ...................................................................... 11

    A.    Eakins failed to rebut Temu's evidence that
        Eakins had actual notice of the Terms of Use.................... 11

        1.    Eakins' brief distorts Temu's argument
              and disputes points Temu did not raise ..................... 11

        2.    Precedent from courts within this Circuit
              shows that Temu successfully shifted the
              burden to Eakins........................................... 15

        3.    Temu's assertion that the Court should
              alternatively remand for an evidentiary
              hearing is not inconsistent................................ 18

    B.    Temu's screens provided reasonably conspicuous notice
        of its Terms of Use, satisfying the inquiry notice test ........ 19

        1.    Eakins misrepresents the state of the law in the
              Tenth Circuit and relies on older cases out of step
              with current jurisprudence ................................. 19

        2.    Examining Temu's screens shows that
              they provided reasonably conspicuous notice............. 23

        3.    Eakins' arguments that attack individual design
              elements without considering the screen as a
              whole fail .................................................. 25

        4.    Eakins' cited authority does not compel a decision
              that the notice was not reasonably conspicuous ........ 28

CONCLUSION .................................................................... 40

ORAL ARGUMENT REQUEST .......................................... 41

Certificate Of Compliance.................................................... 42

# TABLE OF AUTHORITIES

## CASES

*Applebaum v. Lyft, Inc.*,
263 F.Supp.3d 454 (S.D.N.Y. 2017) .............................................. 20, 21

*Beattie v. TTEC Healthcare Sols., Inc.*,
2019 WL 2189481 (D. Colo. May 21, 2019) ................................. 13, 16

*Bellman v. i3Carbon, LLC*,
563 F.App'x. 608 (10th Cir. 2014) ....................................................... 11

*Berkson v. Gogo LLC*,
97 F.Supp.3d 359 (E.D.N.Y. 2015) ................................. 20, 21, 31, 38

*Berman v. Freedom Fin. Network, LLC*,
30 F.4th 849 (9th Cir. 2022) ................................................. 19, 23, 28

*Blake v. JPay, LLC*,
2022 WL 1223634 (D. Kan. Apr. 26, 2022) .................................. 12, 16

*BOSC, Inc. v. Bd. of County Commissioners*,
853 F.3d 1165 (10th Cir. 2017) .......................................................... 14

*Cordas v. Uber Techs.*,
228 F.Supp.3d 985 (N.D. Cal. 2017) .................................................. 17

*Cullen v. Shutterfly Lifetouch, LLC*,
2021 WL 2000247 (N.D. Cal. May 19, 2021) ............................... 31, 33

*Cullinane v. Uber Techs.*,
893 F.3d 53 (1st Cir. 2018) ..................................................... 19, 23, 31

*Davis v. USA Nutra Labs*,
303 F.Supp.3d 1183 (D.N.M. 2018) ................................................... 16

*Edmundson v. Klarna, Inc.*,
85 F.4th 695 (2d Cir. 2023) ............................................................... 21

*Fontanez v. Whaleco, Inc.*,
No. 53-2023CA-374 (Fla. Cir. Ct. Aug. 29, 2023) ...................... passim

*Ghazizadeh v. Coursera, Inc.*,
2024 WL 3455255 (N.D. Cal. June 20, 2024) .................................... 24

*Hancock v. Am. Tel. & Tel. Co., Inc.*,
    701 F.3d 1248 (10th Cir. 2012), *abrogated on other grounds by*
    *Atl. Marine Constr. v. W.D. Tex.*, 571 U.S. 49 (2013)............. 11, 18, 20

*Hetronic Int'l, Inc. v. Hetronic Germany GmbH*,
    99 F.4th 1150 (10th Cir. 2024) ......................................................... 15

*Howard v. Ferrellgas Partners*,
    748 F.3d 975 (10th Cir. 2014) ..................................................... 18, 19

*Island Peak Ranch, L.L.C. v. FIIK Inv. & Holdings, Inc.*,
    2008 WL 2673925 (D. Utah July 7, 2008) ........................................ 12

*Ivy Bridge v. Nature's Sunshine Prods., Inc.*,
    2022 WL 604857 (D. Utah Mar. 1, 2022) ......................................... 13

*Johnson v. Whaleco, Inc.*,
    2023 U.S. Dist. LEXIS 184104 (M.D. Fla. Oct. 13, 2023) ...... 20, 25, 28

*La Force v. GoSmith, Inc.*,
    2017 WL 9938681 (N.D. Cal. Dec. 12, 2017) .................................... 16

*Lee v. DoNotPay, Inc.*,
    683 F.Supp.3d 1062 (C.D. Cal. 2023) ............................................... 24

*Levine v. Vitamin Cottage Nat. Food Markets*,
    2021 WL 4439800 (D. Colo. Sept. 27, 2021) .................................... 16

*Mahram v. Kroger Co.*,
    2024 WL 3878309 (Cal. Ct. App. Aug. 19, 2024)............................... 24

*Martinez v. Capstone Restaurant Grp.*,
    2021 WL 1723776 (D. Colo. Mar. 31, 2021)...................................... 16

*Melnick v. TAMKO Bldg. Prod. LLC*,
    2022 WL 4355299 (D. Kan. Sept. 20, 2022) ..................................... 11

*Meyer v. Uber Techs.*,
    868 F.3d 66 (2d Cir. 2017) ......................................................... passim

*Nardo v. HomeAdvisor, Inc.*,
    2022 WL 17547940 (D. Colo. July 27, 2022) .................................... 12

# TABLE OF AUTHORITIES
## (continued)

*Nguyen v. Barnes & Noble Inc.*,
763 F.3d 1171 (9th Cir. 2014) ....................................................... 19, 30

*Nicosia v. Amazon.com, Inc.*,
834 F.3d 220 (2d Cir. 2016) ......................................................... 31, 37

*Oberstein v. Live Nation Entm't, Inc.*,
60 F.4th 505 (9th Cir. 2023) ...................................................... passim

*Patrick v. Running Warehouse, LLC*,
93 F.4th 468 (9th Cir. 2024) ............................................................ 30

*Petrie v. GoSmith, Inc.*,
360 F.Supp.3d 1159 (D. Colo. 2019) ............................................ 13, 16

*Route App, Inc. v. Heuberger*,
2022 WL 2316377 (D. Utah June 28, 2022) ...................................... 20

*Selden v. Airbnb, Inc.*,
2016 WL 6476934 (D.D.C. Nov. 1, 2016) .......................................... 30

*Smith v. Whaleco, Inc.*,
2024 WL 3513800 (W.D. Okla. July 23, 2024) ............................. 20, 28

*SRI of New Mexico v. Hartford Fire Ins. Co.*,
2015 WL 12803774 (D.N.M. June 26, 2015) ...................................... 12

*Starke v. SquareTrade, Inc.*,
913 F.3d 279 (2d Cir. 2019) ............................................................ 19

*Waltrip v. Pilot Travel Centers*,
2022 WL 684327 (D.N.M. Mar. 8, 2022) .......................................... 16

*Wilson v. Redbox Automated Retail, LLC*,
448 F.Supp.3d 873 (N.D. Ill. 2020) ............................................ 31, 35

## STATUTES

Federal Arbitration Act .............................................................. 19

Oklahoma Telephone Solicitation Act ............................................. 9

## OTHER AUTHORITIES

Jeffrey Gottfried, Americans' Social Media Use,
https://www.pewresearch.org/internet/2024/01/31/americans-social-media-use/ (Jan. 31, 2024)......................................................26

Katherine Haan, Top Website Statistics for 2024,
https://www.forbes.com/advisor/business/software/website-statistics/#sources_section (updated June 4, 2024) ..........................26

Michelle Dunbar, *In Conspicuous Terms—Arbitration Agreements for the Modern Reasonable App User,*
11 Wm. & Mary Bus. L. Rev. 531 (2020)...........................................22

Sapphire Fox, Online Shopping Statistics & Trends in 2023,
https://www.cloudwards.net/online-shopping-statistics/#Sources (June 6, 2023)....................................................................................22

## INTRODUCTION

Temu's opening brief laid out the fundamental error the district court made when evaluating Temu's sign-in page: it focused too narrowly on individual design elements in a vacuum without considering the full sign-in page holistically, as federal courts typically do. Eakins' brief replicates that error.

The key facts are not disputed: Eakins created and logged-in to her Temu account using Temu's smartphone application by entering her phone number and clicking the "Continue" button on two successive screens. (App-108, 114-15, 144.) In each instance, she was presented with notice text, with Temu's Terms of Use containing the subject arbitration provisions presented in a bolded hyperlink reading "By continuing, you agree to our **Terms of Use**." (App-114-15.) After initially creating the account, Eakins signed into her Temu account at least three more times. (App-110-11, 144.) Thus, at least four times, Eakins clicked the "Continue" button above a notice stating, "By continuing, you agree to our **Terms of Use**." (App-114-15.)

The screen had a white background, light gray text, three dark gray bolded hyperlinks ("**Trouble signing in?**", "**Terms of Use**," and "**Privacy & Cookie Policy**"), and five "Continue" buttons (one button allowing users to sign up with their email address, and four other buttons allowing users to sign up with Google, Facebook, Apple, or Twitter accounts):



(App-140.)

After Eakins sued alleging violations of the Oklahoma Telephone Solicitation Act, Temu moved to compel arbitration based on Eakins' agreement to the arbitration provision contained in the Terms of Use. (App-14-26, 61-96.) Temu explained that Eakins was on actual notice of the arbitration provision because she clicked the "Continue" button on multiple occasions, thereby affirming her agreement to be bound by the Terms of Use or, at least, was on inquiry notice. (App-84-88.) Temu offered evidence that Eakins had signed in at least four times, each time clicking "Continue." (App-111, 144.)

In contrast, Eakins did not submit a declaration or any other evidence to dispute that she did not see or read the Terms of Use, or that she did not understand she was agreeing to them. The district court did not properly consider this absence of evidence.

Eakins's position is that Temu's notice was not sufficiently conspicuous because the text was "small" and appeared below a "massive" orange "Continue" button. (App-152, 161.) Yet Eakins offered no evidence (not even a self-serving declaration) to show that she did not see the hyperlink or that she did not know or understand that, by clicking "Continue" each time, she was agreeing to the Terms of Use.

In denying Temu's motion to compel arbitration, the district court considered the individual design elements of the sign-in screen, but did so separately, without considering how each element related to the others or to the screen as a whole. The district court categorized the

Terms of Use hyperlink as "relatively small" (App-200), but did not consider that the font size for the hyperlink is only slightly smaller than the rest of the text on the screen. The district court focused on the distance between the notice text and the orange "Continue" button, but did not consider that it appeared immediately at the end of the row of "Continue" buttons. And the district court noted that the Terms of Use hyperlink was in grey font against a white background, but did not consider that nearly all of the text on the page, including the other hyperlinks, are also in grey font against a white background. In short, the district court considered each of the design elements in a vacuum.

Eakins' brief makes the same analytical mistake. It picks apart the individual elements of Temu's screen but never, as the case law requires, considers the elements together in context.

This Court, exercising *de novo* review and undertaking a "fact-intensive inquiry" from the viewpoint of a "reasonably prudent Internet user," should find that Temu's screen provided reasonably conspicuous notice of its Terms of Use and that Eakins was at least on inquiry notice that she would be bound by the terms therein. *See Oberstein v. Live Nation Entm't, Inc.*, 60 F.4th 505, 513-15 (9th Cir. 2023).

Moreover, the district court also erred by not considering Eakins' failure to present evidence disputing Temu's showing of actual notice, and by not conducting an evidentiary hearing in light of the contract formation dispute. (AOB-19-33). This Court should therefore reverse.

# ARGUMENT

## A. Eakins failed to rebut Temu's evidence that Eakins had actual notice of the Terms of Use.

### 1. Eakins' brief distorts Temu's argument and disputes points Temu did not raise.

As a threshold matter, Temu's opening brief explained that although Temu offered evidence that Eakins had actual notice of the Terms of Use, Eakins failed to offer anything to rebut Temu's evidence. (AOB-19-30.) Temu's argument followed the analytical framework, well-established in this Circuit, that the review of a district court's decision on a motion to compel arbitration is "similar to summary judgment practice." *Hancock v. AT&T*, 701 F.3d 1248, 1261 (10th Cir. 2012), *abrogated on other grounds by Atl. Marine Constr. v. W.D. Tex.*, 571 U.S. 49 (2013). That is, the movant "bears the initial burden of presenting evidence sufficient to demonstrate the existence of an enforceable agreement," and if successful, "the burden shifts to the nonmoving party to raise a genuine dispute of material fact regarding the existence of an agreement." *Bellman v. i3Carbon*, 563 F.App'x. 608, 612 (10th Cir. 2014). (AOB-19-21.) Thus, a party seeking to compel arbitration (here, Temu) need only show "the existence of an arbitration agreement *by a preponderance of the evidence.*" *Melnick v. TAMKO Bldg. Prod.*, 2022 WL 4355299, *4 (D. Kan. Sept. 20, 2022) (emphasis added); *see also SRI of N.M. v. Hartford Fire Ins.*, 2015 WL 12803774,

*3 (D.N.M. June 26, 2015); *Island Peak Ranch v. FIIK Inv. & Holdings*, 2008 WL 2673925, *9 (D. Utah July 7, 2008).

Temu met this low initial evidentiary burden by submitting authenticated business records demonstrating that, on at least four occasions, Eakins was provided with the Terms of Use containing the arbitration provisions, including when she signed up for the account and each time she signed in. (*See* App-144.) Temu offered evidence that a jury could have found sufficient to establish that Eakins had actual notice of the Temu's Terms of Use and, thus, the existence of the arbitration agreement. In rebuttal, Eakins merely needed to submit a simple declaration, but she chose not to. (*See* App-147-75.)

Courts within this Circuit have found similar evidence sufficient to meet the movant's initial burden to demonstrate the existence of a valid agreement to arbitrate and shift the evidentiary burden to the opposing party. *See, e.g.*, *Blake v. JPay, LLC*, 2022 WL 1223634, *4 (D. Kan. Apr. 26, 2022) (sufficient for burden-shifting analysis to proffer statement that plaintiff was presented with Terms of Service, which included agreement to arbitrate); *Nardo v. HomeAdvisor, Inc.*, 2022 WL 17547940, *5 (D. Colo. July 27, 2022), *report & rec. adopted*, 2022 WL 17547938 (Aug. 11, 2022) (sufficient to proffer screenshots showing plaintiff visited the site in question and clicked a button acknowledging assent to the Terms and Conditions); *Ivy Bridge v. Nature's Sunshine Prods.*, 2022 WL 604857, *4 (D. Utah Mar. 1, 2022) (sufficient to proffer

declaration stating that the arbitration agreement was emailed to the plaintiffs); *Beattie v. TTEC Healthcare Sols.*, 2019 WL 2189481, *2 (D. Colo. May 21, 2019) (sufficient to proffer screenshots showing plaintiffs were presented with hyperlinks to the arbitration agreement and an accompanying explanation of their assent); *Petrie v. GoSmith, Inc.*, 360 F.Supp.3d 1159, 1162 (D. Colo. 2019) (sufficient to proffer website data showing plaintiff assented to the Terms of Use containing the arbitration agreement when registering for a website account). The district court did not consider this when denying Temu's motion to compel arbitration. (App-198.)

Eakins' response distorts Temu's argument, stating "Temu misapprehends which party bears the burden in the first instance and when, if ever, it shifts." (AB-16.) Not so. Temu has never claimed that Eakins bore the burden in the first instance. Rather, Temu explained that it met its initial evidentiary burden, in accord with applicable federal precedent, by putting forth competent admissible evidence sufficient to meet the preponderance standard in support of its argument that Eakins' actual notice of the Terms of Use in its motion to compel arbitration and, in response, Eakins failed to meet her burden to present rebuttal evidence. (AOB-22.)

Eakins also argues that Temu failed to "prove[]" her actual knowledge of the Terms of Use, and therefore she was "not required to come forward with evidence to rebut her actual knowledge." (AB-19, 20.)

But Temu is not required to "prove" that Eakins had actual knowledge before the burden shifts to Eakins, but only to show "evidence sufficient to demonstrate" her actual knowledge. *BOSC, Inc. v. Bd. of County Commissioners*, 853 F.3d 1165, 1177 (10th Cir. 2017). Temu did so, and the burden shifted to Eakins to present competent evidence to refute Temu's showing. She did not.

Eakins' assertion that Temu did not preserve its argument as to actual notice based on the many times she logged into her account, including after she filed the instant lawsuit, is misguided and mischaracterizes the record. (*See* AB-24, n.8.) Temu's motion to compel arbitration showed that (1) Eakins logged on to her Temu account "on multiple occasions," including "twice after she had filed her Complaint, on June 7, 2023 and July 15, 2023"; (2) the terms containing the agreement to arbitrate were "conspicuously hyperlinked in a contrasting bold font, presented in close spatial and temporal proximity to the 'Continue' button Plaintiff had to click to continue signing up for her account on the App *or when logging on later via the App or Website*"; and (3) that "by voluntarily clicking the 'Continue' button on the App during registration *and again later when accessing her account using the same process multiple times*, … she had *actual (or at least 'inquiry') notice of the Terms*." (App-77, 87-88 (emphasis added).) Temu additionally provided evidence, in the form of authenticated business records, of Eakins' log-ins on those dates and of the appearance of the

14

terms on the log-in page. (App-110-11, 139-44.) Moreover, the case Eakins cites for this proposition does not support its argument. *Hetronic Int'l v. Hetronic Germany GmbH*, 99 F.4th 1150, 1164 (10th Cir. 2024) (stating arguments not raised in the district court are waived).

The district court erred when it found that Temu had not met its initial burden to show the existence of an agreement to arbitrate, and again thereafter when it failed to consider that Eakins offered no evidence at all that would raise a genuine issue of material fact. (*See* App-198.)

### 2. Precedent from courts within this Circuit shows that Temu successfully shifted the burden to Eakins.

Eakins' attempt to distinguish Temu's authorities on this point (AB-23) falls flat for the same reason: Eakins misapprehends Temu's argument. That Temu cited to cases in which "the defendant *met its initial burden*" (AB-19) is precisely the point. As Eakins admits, the non-moving party's "obligation to produce rebuttal evidence" is "triggered" when the movant, as Temu did here, produces evidence to support the existence of an arbitration agreement. (AB-22.)

Moreover, in this section Eakins conflates two issues: (1) whether Temu met its burden, and (2) whether Eakins attempted to meet hers. Eakins characterizes many of Temu's cited authorities as "immaterial" (AB-21) based on minor factual differences, such as the cases involving clickwrap instead of hybrid agreements. Eakins fails to appreciate that

the salient point for which Temu offered many of these authorities is not, for example, that its agreement is the same as a clickwrap agreement. Rather, the point is that once one party has put forth a showing that satisfied its initial burden, the lack of a proffer of evidence by the other side is often fatal. Eakins' argument does nothing to counter this. *See Waltrip v. Pilot Travel Centers*, 2022 WL 684327, *6 (D.N.M. Mar. 8, 2022) (plaintiff who did not submit a declaration stating he did not agree to arbitrate did not "show[] a genuine question of material fact precluding an order to arbitrate his dispute"); *Levine v. Vitamin Cottage Nat. Food Markets*, 2021 WL 4439800, *7 (D. Colo. Sept. 27, 2021) (plaintiffs who provided no evidence suggesting they denied executing arbitration agreements failed to overcome defendant's initial showing); *La Force v. GoSmith, Inc.*, 2017 WL 9938681, *4 (N.D. Cal. Dec. 12, 2017) (same); *Martinez v. Capstone Restaurant Grp.*, 2021 WL 1723776, *3 (D. Colo. Mar. 31, 2021) (merely denying existence of an arbitration agreement, without more, is insufficient to overcome defendant's initial showing); *Blake*, 2022 WL 1223634 (same); *Davis v. USA Nutra Labs*, 303 F.Supp.3d 1183, 1192 (D.N.M. 2018) (same); *Petrie*, 360 F.Supp.3d at 1162 (same); *Beattie*, 2019 WL 2189481, *2 (same); *Cordas v. Uber Techs.*, 228 F.Supp.3d 985, 989 (N.D. Cal. 2017) (same).

Finally, Eakins' argument that this Court should not be persuaded by the reasoning in *Fontanez v. Whaleco, Inc.*, No. 53-

2023CA-374 (Fla. Cir. Ct. Aug. 29, 2023) because Eakins, unlike the plaintiff there, "has not filed a spate of prior class actions concerning telemarketing" (AB-24) is beside the point. The *Fontanez* court's "reasonable inference" that the plaintiff "should have been aware that online retailers" have Terms of Use based on her prior litigation history did not impact the court's conclusions that plaintiff "never specifically argue[d] that she did not have actual knowledge" of the Terms of Use. (App-100, 103.) In *Fontanez*, the court applied the same summary judgment standard to the motion to compel arbitration, found Temu met its initial evidentiary burden to show the existence of an arbitration agreement, shifted the evidentiary burden to the plaintiff to submit evidence refuting that showing, and ruled that the plaintiff failed to meet that burden when she did not submit evidence refuting actual notice. (App-100, 103.)

In short, contrary to Eakins' efforts to identify minor distinctions (but not meaningful differences), Temu's authorities support both that Temu met its initial burden to proffer sufficient evidence to demonstrate the existence of an agreement to arbitrate, and that Eakins thereafter failed to meet her burden to present evidence to the contrary. Therefore, the district court erred in denying Temu's motion to compel arbitration.

### 3. Temu's assertion that the Court should alternatively remand for an evidentiary hearing is not inconsistent.

Temu also explained that if the district court believed that Eakins had adequately disputed the existence of an arbitration agreement, then the court had to conduct an evidentiary hearing to evaluate that conflicting evidence. (AOB-31-33.) Given that Eakins failed to present any evidence whatsoever to dispute the existence of an arbitration agreement, obviously this is an argument-in-the-alternative.

Eakins' argument that Temu cannot make arguments in the alternative is unavailing. (*See* AB-23, n.7.) Based on all the reasons discussed in its opening brief and above, Temu's position is that Eakins failed to raise a genuine dispute of material fact and therefore the district court erred when it denied Temu's motion to compel arbitration. *See, e.g.*, *Hancock*, 701 F.3d at 1248 ("[A] court may grant a motion to compel arbitration [under the FAA] if there are no genuine issues of material fact regarding the [existence of] parties' agreement.").

If, however, the district court instead found that a genuine dispute of material fact *did* exist, then the court erred when it did not conduct an evidentiary hearing to resolve the issue before ruling on Temu's motion. *See Howard v. Ferrellgas Partners*, 748 F.3d 975, 984 (10th Cir. 2014) (reversing and remanding where the district court denied the motion to compel without conducting a trial, holding that when "factual disputes may determine whether the parties agreed to arbitrate," the

Federal Arbitration Act "requires" the case "proceed[] *summarily* to trial").[1] Therefore, if this Court does not reverse, it should order the district court to conduct an evidentiary hearing.

## B. Temu's screens provided reasonably conspicuous notice of its Terms of Use, satisfying the inquiry notice test.

### 1. Eakins misrepresents the state of the law in the Tenth Circuit and relies on older cases out of step with current jurisprudence.

Eakins asserts that the district court's order was "firmly rooted in controlling Tenth Circuit precedent." (AB-2.) This is simply wrong. On the question of whether the screens in question provided reasonably conspicuous notice, the district court cited to precedent that would be controlling only within the First,[2] Second,[3] and Ninth[4] Circuits, along with other out-of-circuit district court cases that would not be binding precedent anywhere.[5] (App-198-202.) The district court's order cited

---

[1] Eakins' quibble with Temu's citation to *Howard* (AB-23, n.7), is itself misplaced. Because the district court here erroneously did not consider Temu's proffered evidence that an arbitration agreement existed, an unresolved factual question at minimum *was* present here.

[2] *Cullinane v. Uber Techs.*, 893 F.3d 53 (1st Cir. 2018).

[3] *Meyer v. Uber Techs.*, 868 F.3d 66 (2d Cir. 2017); *Starke v. SquareTrade*, 913 F.3d 279 (2d Cir. 2019).

[4] *Nguyen v. Barnes & Noble*, 763 F.3d 1171 (9th Cir. 2014); *Berman v. Freedom Fin. Network*, 30 F.4th 849 (9th Cir. 2022); *Oberstein*, 60 F.4th 505 (9th Cir. 2023).

[5] *Berkson v. Gogo LLC*, 97 F.Supp.3d 359 (E.D.N.Y. 2015); *Applebaum v. Lyft, Inc.*, 263 F.Supp.3d 454 (S.D.N.Y. 2017); *Fontanez v. Whaleco*,

only two cases from within this Circuit, one for a general description of clickwrap agreements (*Hancock*, 701 F.3d 1248), and one for the basic proposition that courts "engage in fact-intensive inquiries" when determining whether sign-in-wrap agreements are enforceable (*Route App, Inc. v. Heuberger*, 2022 WL 2316377, *3 (D. Utah June 28, 2022).) (App-198-99.) Hence Eakins' assertion about "controlling Tenth Circuit precedent" is incorrect: there is no such precedent.

Additionally, Eakins' next relies heavily on trial court decisions like *Johnson v. Whaleco* and *Smith v. Whaleco*, which come to the conclusion Eakins urges, but then self-servingly characterizes *Fontanez v. Whaleco*, which arrives at the opposite conclusion, as "unsound." (AB-2-3, 11-12, 24, 28-29, 40.) It is for this Court to decide which of this nonbinding precedent it finds sound or persuasive, not Eakins. Temu has already explained why *Johnson* is wrongly decided, and *Smith* (which is now on appeal to this Court), heavily relies on *Johnson* and Eakins' own decision, and thus suffers from the same flawed analysis that should be reversed by this appeal.

Moreover, Eakins' brief relies on older (and mostly out-of-circuit) cases that are out-of-step with the current state of the law on this topic. Two of the more extreme examples of this are: (1) Eakins' citation to *Berkson*, 97 F.Supp.3d 359 (E.D.N.Y. 2015) for the proposition that

---

No. 53-2023CA-374, Dkt. 33-2 (Fla. Cir. Ct. Aug. 29, 2023); *Johnson v. Whaleco*, 2023 U.S. Dist. LEXIS 184104, (M.D. Fla. Oct. 13, 2023).

Temu's notice was not reasonably conspicuous because clicking the "Continue" button "does not cause the terms of use to appear in a new screen or in a separate pop-up window on the same screen" (AB-38 (cleaned up)) and (2) Eakins' quotation from *Applebaum,* 263 F.Supp.3d 454 (S.D.N.Y. 2017): "a reasonable consumer would not have understood that the light blue 'Terms of Service' hyperlinked to a contract for review" (AB-38).[6]

More recent cases evaluate conspicuousness from the standpoint of the "'reasonably prudent' internet or smartphone user" who "is not a complete stranger to computers or smartphones, having some familiarity with how to navigate to a website or download an app." *Edmundson v. Klarna, Inc.*, 85 F.4th 695, 703 (2d Cir. 2023); *cf. Meyer*, 868 F.3d at 77 ("when considering the perspective of a reasonable smartphone user, we need not presume that the user has never before" "entered into a contract using a smartphone"); Michelle Dunbar, *In Conspicuous Terms—Arbitration Agreements for the Modern Reasonable App User*, 11 Wm. & Mary Bus. L. Rev. 531, 561 (2020) ("Modern app

---

[6] Further illustrating that *Applebaum* rests on an outdated understanding of web design, the full passage reads: "A reasonable consumer would not have understood that the light blue 'Terms of Service' hyperlinked to a contract for review. Lyft argues that coloring words signals "hyperlink" to the reasonable consumer, but *the tech company assumes too much. Coloring can be for aesthetic purposes.*" *Applebaum*, 263 F.Supp.3d at 467 (emphasis added).

users understand what various types of hyperlinks look like" and "understand what the language "Terms and Conditions" means and what constitutes entering into such contracts"). Only 7% of American adults do not use the internet. *See* Sapphire Fox, Online Shopping Statistics & Trends in 2023, [https://www.cloudwards.net/online-shopping-statistics/#Sources](https://www.cloudwards.net/online-shopping-statistics/#Sources) (June 6, 2023) (citing 2021 Pew Research Center). In contrast, 76% of U.S. adults are online shoppers, with 62% considered "regular online shoppers" who buy a product or service online more often than once a month. *Id.* In short, the average American is an internet shopper, and understands how to create and use online accounts—which includes online contracting, i.e., manifesting assent to Terms of Use.

The reasonably prudent internet or smartphone user today who signs up for an online account knows full well that she or he is "signing in" or "registering" for an *ongoing continuing relationship* with an internet retailer, which inherently entails contractual terms (such as arbitration provisions) that govern the relationship. *Oberstein*, 60 F.4th at 516 (enforcing terms of use and compelling arbitration). As demonstrated above and discussed below, Eakins' insistence that Temu's hyperlinks were not reasonably conspicuous because they were not underlined, because the screen also included several "Continue" buttons, or because the top of the screen included two simple icons

illustrating "Free shipping" and "Free returns" is simply old-fashioned, obtuse, and not reflective of current law. (*See* AB-5-6.)

## 2. Examining Temu's screens shows that they provided reasonably conspicuous notice.

Temu's opening brief explained how, based on the relevant design factors, its screens provided reasonably conspicuous notice of its Terms of Use and therefore put Eakins on inquiry notice of the terms, including the arbitration provision. (AOB-33-40.) Courts use a fact-intensive inquiry to determine whether any particular screen provides reasonably conspicuous notice. *See Berman*, 30 F.4th at 856-58; *Meyer*, 868 F.3d at 76. This inquiry involves evaluating the totality of the visual design elements, in context, and asking whether the screen *as a whole* provides reasonably conspicuous notice of the terms. *See Oberstein*, 60 F.4th at 515; *Cullinane*, 893 F.3d at 63 (analysis of hyperlink's conspicuousness "must be contextualized" and "may not be read in a vacuum").

Temu used a clean, uncluttered screen with a white background, two small minimalist graphics placed well away from the notice text, five buttons of identical size and shape presenting variations on one option (continue with email, continue with Google, continue with Facebook, continue with Apple, continue with Twitter), and a single sentence reading "By continuing, you agree to our **Terms of Use** and **Privacy & Cookie Policy**." (App-114.) There are only 45 words on the

entire screen, *including* the 13 words in the notice text. It cannot be the case that a reasonably prudent Internet user is free to ignore and disclaim a quarter of the text on the page. As Temu's opening brief shows, myriad courts have found similar opt-in pages sufficient to put a plaintiff on inquiry notice. (*See* AOB-42-47.)

When examined holistically, Temu's screens provided reasonably conspicuous notice of the terms. *See, e.g.*, *Mahram v. Kroger Co.*, 2024 WL 3878309, *1-2 (Cal. Ct. App. Aug. 19, 2024) (screen provided reasonably conspicuous notice when lettering "contrasted with the color of the other lettering," and was presented in "a small but readable font"); *Ghazizadeh v. Coursera, Inc.*, 2024 WL 3455255, *10 (N.D. Cal. June 20, 2024) (screen provided reasonably conspicuous notice when the hyperlinked terms presented in black were "darker and bolder" than the surrounding gray text and the light gray background, the font was small but not so small that the contrast was not apparent, and the "simple and uncluttered" "context of the overall design" did not detract from the notice); *Lee v. DoNotPay, Inc.*, 683 F.Supp.3d 1062, 1070 (C.D. Cal. 2023) (screen provided reasonably conspicuous notice when it was "printed in a crisp gray font which contrasts [with] the plain-white background," and the font "remains of readable size and the whole screen is visible at once").

### 3. Eakins' arguments that attack individual design elements without considering the screen as a whole fail.

Eakins' brief begins by quoting at length from the district court's opinion, in essence restating the district court's analysis. (AB-25-29; App-200-01.) By so doing, Eakins replicates the same error made by the district court: examining individual design elements in a vacuum and asking whether each separate piece is conspicuous.[7]

Eakins argues that the font used for the notice text is "tiny." (AB-28; *see also* AB-6, 27, 39 (using the word "small").) Size, of course, is relative. The notice text is not significantly smaller than the rest of the text and appears larger than the only other sentence on the page ("Trouble signing in?"). In the context of this screen as a whole, the size of the notice text makes little difference, if any. Indeed, Temu presented no fewer than seven comparable sign-up screens in which the notice text was smaller than other text on the screen, from courts in various Circuits, and in all cases the court compelled arbitration. (AOB-42-47.)

Eakins also argues that the "giant" orange "Continue" button is so set apart from the other four "Continue" buttons that it may not even be clear that the notice text applies to the top button. (AOB-27, 39.) But

---

[7] Eakins acknowledges that both this district court and the court in *Johnson v. Whaleco* "singled out the design choices related to the presentation of the 'barely visible' Terms of Use." (AB-29.) As discussed above, singling out individual design choices is improper and inconsistent with applicable law.

the design elements on Temu's page, properly taken together, make it clear that this argument is unavailing. Each button is labeled "Continue," and the notice text informs the user what "continuing" means. (App-140.)[8] Similarly, Eakins describes the other "Continue" buttons as "four colorful buttons," but ignores that those "colors" are merely the familiar colored logos of universally-known service providers including Google and Facebook (the buttons themselves are white and have the same font as the orange button). (AB-37; App-140.)[9] This is not an instance of the webpage using colors to distract a user. A reasonably prudent Internet user would understand that the notice text applies to every button—i.e., that "continuing" using any of the five buttons constitutes an agreement.

Eakins further argues that the hyperlink itself is not conspicuous because it appears in the same color font as the rest of the notice. (AB-

---

[8] When examining the entire screen, it is clear that the top "Continue" button is not any larger than the other "Continue" buttons. (App-140.)

[9] Indeed, 68% of American adults use Facebook. *See* Jeffrey Gottfried, Americans' Social Media Use, https://www.pewresearch.org/internet/2024/01/31/americans-social-media-use/ (Jan. 31, 2024). Globally, Google is the most visited website in the world, accounting for 91.5% of global online traffic. *See* Katherine Haan, Top Website Statistics for 2024, https://www.forbes.com/advisor/business/software/website-statistics/#sources_section (updated June 4, 2024). Twitter (now "X") and Apple are also well-known brands with well-known icons, and the use of such icons for opt-in pages is a common practice. (AOB-42-47.)

27-28, 37.) Again, that analysis ignores other design elements that make the hyperlink reasonably conspicuous. For example, on Temu's screen, the hyperlink is bolded and the words "Terms" and "Use" are capitalized, creating a clear visual difference between the hyperlink and the rest of the notice text. (App-140.) Moreover, the limited color palette of Temu's screen means that, in context, less is required to distinguish the hyperlink than might be required on another screen with a different design. Eakins also ignores that the other hyperlink on the page ("Trouble signing in?") is also set in the same bolded font, giving the user even more notice that bold gray text on this screen indicates a hyperlink.[10]

Finally, Eakins argues that the notice "does not jump off the screen." (AB-37.) But the standard is "reasonably conspicuous notice," or "displayed in a font size and format such that the court can fairly assume that a reasonably prudent Internet user would have seen it"—the standard is not maximally conspicuous notice. *Berman*, 30 F.4th at 856.

Applying the proper standard and considering the design of Temu's sign-in page as a whole, this Court should conclude that Temu's

---

[10] Eakins' statement that "[o]nline marketers routinely use [similar features to those found in Temu's sign-in screen] to keep customers from understanding the consequences of pressing buttons on a website" (AB-30) is nonsensical and Eakins offers nothing in the record or in case law to support the assertion.

page and hyperlinks provided reasonably conspicuous notice to any reasonably prudent contemporary internet or smartphone user, and therefore put Eakins on inquiry notice of the Terms of Use and the arbitration provision therein. This Court should therefore enforce that arbitration provision.

### 4. Eakins' cited authority does not compel a decision that the notice was not reasonably conspicuous.

Eakins cites two trial court decisions, *Johnson v. Whaleco*, 2023 U.S. Dist. LEXIS 184104, and *Smith v. Whaleco*, 2024 WL 3513800 (W.D. Okla. July 23, 2024), in an attempt to shade existing case law examining Temu's screen as uniformly against Temu's position. (AB-28-30.) But that is not the state of the law. Another case, *Fontanez v. Whaleco*, No. 53-2023CA-374 (Fla. Cir. Ct. Aug. 29, 2023), analyzed the same screen and came to the opposite conclusion—that Temu's screen design provided conspicuous notice. (*Fontanez*, App-102-03.) At best, case law on Temu's screens is still developing and the question is not settled. This Court, exercising its *de novo* review, can (and should) examine Temu's screen and find that it is sufficiently conspicuous to "put a reasonably prudent person on inquiry notice." *Id.*

Eakins gives short shrift to the reasoned analysis in *Fontanez*, arguing that "[i]n essence, the *Fontanez* court determined that plaintiff had actual notice of Temu's terms and conditions *by virtue of the fact that she had filed eleven class action lawsuits within the same court*."

(AB-40 (emphasis added).) But that is not what the court did. Rather, *Fontanez* took judicial notice of the fact that, in one of the plaintiff's prior lawsuits, the defendant had filed a motion to compel arbitration based on its online terms and conditions, and therefore plaintiff "should have been aware that online retailers have 'Terms of Use' or 'Terms and Conditions' agreements." (App-99-100.) This statement had nothing to do with its analysis of Temu's specific screen and merely ascribed general knowledge to the plaintiff that online retailers use Terms of Use. Nor was it the only basis for that court's holding.

When it did examine Temu's screen, the *Fontanez* court applied the same summary judgment standard used in federal courts, and used the required totality-of-the-circumstances approach, to conclude that, because the hyperlink was presented in bold type and the notice was immediately visible when considering Temu's "full-screen user interface design" without requiring the user to scroll to find it and placed below the "Continue" buttons to which it refers, it was reasonably conspicuous. (App-102-03.) *See also Meyer*, 868 F.3d at 78 ("The entire screen is visible at once, and the user does not need to scroll beyond what is immediately visible to find notice of the Terms of Service.").

Eakins further criticizes *Fontanez* because it did not mention specific details such as the font size of the notice, the color or underlining of the hyperlink, or other visual elements on the page. (AB-40.) But courts are not required to analyze those or any other specific

features in particular, let alone in a vacuum. Courts instead look to "'the conspicuousness and placement of the "Terms of Use" hyperlink, other notices given to users of the terms of use, and the website's general design'" in evaluating conspicuousness. *Oberstein*, 60 F.4th at 515, quoting *Nguyen*, 763 F.3d at 1177; *see also Patrick v. Running Warehouse*, 93 F.4th 468, 477 (9th Cir. 2024) ("That the links are not blue, underlined, or capitalized does not undercut" the court's conclusion that the screen provided reasonably conspicuous notice.); *Meyer*, 868 F.3d at 78 (considering not only font size and color, but also that the user could view the entire screen together and did not have to scroll to see the hyperlink); *Selden v. Airbnb*, 2016 WL 6476934, *5 (D.D.C. Nov. 1, 2016) (courts "have cited *factors such as*" font size and color, but also "whether the user signed up for the agreement using a mobile device" (emphasis added)). In this regard, the *Fontanez* court holistically considered the typeface, the placement relative to the "Continue" button and the rest of the items on the page, and the overall composition of the screen, and reasonably concluded that the screen satisfied the inquiry notice standard. This Court should do the same.

Eakins relies on five additional cases, *Cullinane*, *Cullen*, *Wilson*, *Nicosia*, and *Berkson*, to argue that Temu's notice was not reasonably conspicuous. In each case, the notice was meaningfully dissimilar, and thus easily distinguishable, from Temu's.

**1.** In *Cullinane*, 893 F.3d at 63, the court evaluated the "Link Payment" screens (shown below, taken from the Decl. of Paul Holden and Exhibits A-3 & B-3, Dkt. Nos. 32-1, 32-2, 32-3), considering that (1) other non-hyperlinked terms shared the same design features (typeface and size), so the hyperlinks were not recognizable as such; (2) the words "CANCEL" and "DONE" were presented in larger and darker font, making them more conspicuous; and (3) the presence of the additional payment option and PayPal button further pulled attention away from the hyperlinks. Note also the use of a black background, which can make text hard to read. None of those concerns are present in Temu's screens. Moreover, the *Cullinane* court also considered that the hyperlink was "displayed in white bold font within a gray rectangular box" and concluded that "these features *may have been sufficient to accentuate a hyperlink found within a registration process interface with a plain design and limited content*," such as Temu's. *Id.* at 63 (emphasis added). Thus, *Cullinane* actually supports Temu's position.





**2.** In *Cullen v. Shutterfly Lifetouch*, 2021 WL 2000247, *8 (N.D. Cal. May 19, 2021)—*which did not involve online notice via a hyperlink or otherwise*—the court considered images on paper order forms (shown below) and concluded that the size of the font, the gray color of the text, and the lack of any header or indicator were not reasonably conspicuous enough to satisfy the inquiry notice test (*see* Decl. of John Grant and Exhibit D, No. 5:20-cv-06040-NC, Dkt. Nos. 21-1, 21-5). This paper order form does not remotely resemble Temu's sign-up page or any others that courts have approved.



**3.** In *Wilson v. Redbox Automated Retail*, 448 F.Supp.3d 873 (N.D. Ill. 2020), the court considered the "My Bag" screen shown below and concluded that the hyperlink did not provide reasonably conspicuous notice in part because (1) "the button for the Terms of Use and accompanying disclosure [we]re not adjacent to the 'Pay Now' button"; (2) there were "two other buttons between the 'Pay Now' button and the link to the Terms of Use"; and (3) the movies selected for rental, the fine print concerning the rental terms, the navigational buttons, and other buttons all "contribute[d] to the general clutter" of the screen. *Wilson*, 448 F.Supp.3d at 883-85; *see* Exh. A to Defendant's Memo. Supporting Motion to Compel Arbitration, No. 1:19-cv-01993, Dkt. No. 13-1. The "My Bag" screen simply does not resemble Temu's screens.[11]

---

[11] The analysis Eakins relies on comes from the section of the *Wilson* opinion, pages 883-85, examining the "My Bag" screen. (AB-36-37.) The *Wilson* court also examined a separate "Sign In" screen and found that its "gray disclosure text surrounding the hyperlinks not reasonably conspicuous because there is insufficient contrast between the gray text and the black background." *Wilson*, 448 F.Supp.3d at 886. However, the detailed portions of the opinion quoted by Eakins were not describing the "Sign In" screen.



**4.** In *Nicosia v. Amazon.com*, 834 F.3d 220, 237, 241 (2d Cir. 2016), the court considered the order page shown below, and concluded that the hyperlink was not reasonably conspicuous. Despite Eakins' argument that this order page is "similar to the Temu app registration flow" (AB-36), Temu's hyperlinks are far more conspicuous than those shown below and very little, if anything, about the order page is similar to Temu's screens.



**5.** And as Eakins points out (AB-38), in *Berkson*, 97 F.Supp.3d at 404, the court examined the sign-in screen shown below and considered that the hyperlink was "not in large font, all caps, or in bold." But the conspicuousness analysis, of course, does not require a hyperlink to be in large font, all caps, or bold. As Eakins also mentions (AB-38), *Berkson* noted that pressing the SIGN IN button did not cause the terms of use to "appear in a new screen or in a pop-up window on the same screen," nor was the user "required to scroll through" the terms. *Id.* Again, none of that is required. To the extent that Eakins relies on this reasoning to argue that Temu's notice is not reasonably conspicuous, the argument is not in line with the current state of the law.



By clicking "Sign in" I agree to the <u>terms of use</u> and <u>privacy policy</u>

*  *  *

Eakins' analysis of authority she cites to support her position suffers from the same failing as the analysis of Temu's screen in both Eakins' brief and the district court's ruling. It "zero[s] in" on and "single[s] out" discrete design choices, but never considers the totality of the entire screen. (AB-29, 31.) When viewed objectively, as a whole, it is clear that none of the examples Eakins offers remotely resemble Temu's screen.

Eakins' discussion of Temu's authority similarly misses the point. Shoehorned into a single footnote, it boils down to the observation that Temu's cases involve links in different colors "and in many cases are in all capital letters, or underlined." (AB-33, & n.10.)

## CONCLUSION

The district court erred in several respects. First, the court did not apply the proper evidentiary standards, and did not consider or conduct an evidentiary hearing. Next, the hyperlink presenting Temu's Terms of Use was conspicuous in the context of the rest of Temu's clean and uncluttered sign-in page that is immediately visible to users on one screen without the need to scroll to find the prompt, which read "By continuing, you agree to our **Terms of Use** …." Its gray bolded text stood out clearly from the white background and the lighter surrounding text, and was immediately below the list of options to "Continue" past that screen. If the hyperlink text was small, it was not

significantly smaller than all of the rest of the text on the page. Any reasonably prudent Internet user would have understood that signing in and clicking "Continue" multiple times manifested assent to the terms. Even Eakins does not actually argue that she was not aware that she had agreed to the terms.

Based on this Court's *de novo* review of Temu's screens, and consistent with numerous cases from district courts in other Circuits examining similar screens, this Court should reverse the district court's denial of arbitration and order Eakins to arbitrate her claims.

## ORAL ARGUMENT REQUEST

As discussed above, this case raises significant new questions of law within this Circuit. Neither party on appeal has identified on-point precedent from this Court on the issue of the reasonably conspicuous notice standard as it relates to hyperlinks. Therefore, oral argument is appropriate and respectfully urged.

September 11, 2024
Respectfully submitted,

MANATT, PHELPS & PHILLIPS, LLP

By: *s/Benjamin G. Shatz*
    *Attorneys for Appellant*
    Whaleco Inc. d/b/a Temu

## Certificate of Compliance
## for Briefs with Type-Volume Limit

1. This **Appellant's Reply Brief** complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(g) and the word limit of Rule 28(e)(2) because, excluding the parts of the document exempted by Rule 32(f), this document contains **6,498** words (within the 6,500 words permitted).

2. This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Rule 32(a)(6) because this document has been prepared in a proportionally spaced typeface using the Microsoft Word (version Microsoft for Microsoft Word 365 MSO) word processing program in 14-point Century Schoolbook.

September 11, 2024

Respectfully submitted,

By: *s/Benjamin G. Shatz*
  MANATT, PHELPS & PHILLIPS, LLP
  2049 Century Park East, Suite 1700
  Los Angeles, CA 90067

  *Attorneys for Appellant*
  Whaleco Inc. d/b/a Temu